# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.             Case No. 07-CR-285

**JOHARI WALKER**
   **Defendant.**

## DECISION AND ORDER

  The government charged defendant Johari Walker with possession with intent to distribute crack cocaine, 21 U.S.C. § 841(a)(1) & (b)(1)(A), possession of a firearm in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c), and possession of a firearm as a felon, 18 U.S.C. § 922(g). Defendant moved to suppress evidence seized pursuant to a search warrant, and the magistrate judge handling pre-trial proceedings in the case recommended that the motion be denied.[1] Defendant objects, requiring me to the review the matter de novo.[2] Fed. R. Crim. P. 59(b)(3).

---

  [1]Specifically, the magistrate judge adopted the recommendation she had issued in a previous, identical case, which another judge of this district dismissed without prejudice. The magistrate judge also denied defendant's request for an evidentiary hearing, which defendant does not challenge before me. Finally, the parties agree that although defendant was not a resident of the premises searched pursuant to the warrant, she possesses standing as an overnight guest to challenge the warrant.

  [2]The government contends that defendant presents no new arguments in her objections and simply disagrees with the magistrate judge's conclusions, which is insufficient to trigger my duty to review the matter de novo. I disagree. Defendant has made "specific written objections" as Fed. R. Crim. P. 59(b)(2) requires. Further, because Fed. R. Crim. P. 59(b)(3) and 28 U.S.C. § 636(b)(1) require de novo review of the magistrate judge's recommendation based on such objections, defendant may base her argument on disagreement with the magistrate judge's legal conclusions or factual findings or both. Finally, it is generally improper to raise before the district judge arguments not previously presented to the magistrate judge. See United States v. Melgar, 227 F.3d 1038, 1040 (7th Cir. 2000) (stating that "there are good

## I. FACTS

The warrant in the present case issued on the application of City of Racine Police Investigator Todd Yde. In his supporting affidavit, Yde averred:

> 2. Your affiant, within the last 72 hours, was contacted by a reliable confidential informant (CI), who stated the CI had observed cocaine and THC (marijuana) within the last 72 hours, in the residence at 1017 Pearl Street, which is in the City of Racine, County of Racine, State of Wisconsin.
>
> 3. Your affiant, was by told [sic] the CI that the person in possession of the cocaine and THC (Marijuana) at 1017 Pearl Street, is a black male by the name of Quinton Smith and that the CI has observed Smith was in possession of a Semiauto handgun within the last two weeks at this residence. Further that the CI knows the material possessed by Smith at 1017 Pearl Street, to be crack cocaine and THC (marijuana) from personal experiences of the CI.
>
> 4. Your affiant personally observed the residence at 1017 Pearl Street, describing it as a two story single family dwelling of wood construction being white in color, with the numbers "1017" affixed to the west face of the building just above the front door of the residence.
>
> 5. That your affiant believes the information supplied by the CI, as the CI has supplied information about on-going criminal activity to the Racine Police Department, Special Investigations Unit that has resulted in at least 5 felony and 2 misdemeanor arrests in the past six months, further that these arrests were made as a direct result of a search warrant execution based on this information or as an immediate police response to specific current criminal activity. The CI has also provided information in regards to this drug investigation and on at least 10 other drug dealers in the City of Racine that has been able to verify [sic] through further investigations and other sources.

(Yde Aff. [R. 13 attachment A] ¶¶ 2-5).

> 16. Your affiant did check the Wisconsin Department of Corrections records and did locate a Quinton J. Smith DOB 06-28-77 and learned that he was just released to Active Community Supervision on 11-18-06 where he was in prison for Possession of Cocaine with intent to deliver and has prior convictions of Possession of THC and Escape. Your affiant also learned that Smith has tattoos

---

reasons for the rule that district courts should not consider arguments not raised initially before the magistrate judge, even though their review in cases governed by 28 U.S.C. § 636(b)(1) is de novo").

2

Case 2:07-cr-00285-LA   Filed 01/23/08   Page 2 of 9   Document 17

of a Pitchfork, 6-point star, and letters "GD" and "IG 357" which are all gang tattoos showing affiliation with the Gangster Disciples Street Gang. Your affiant believes this information as these records are updated on a daily basis.

17. Your affiant checked the Racine Police Department records and learned that Carolyn B. Peet DOB: 10-01-56 is residing at 1017 Pearl Street. Your affiant believes this information to be accurate as it is updated on a daily basis as a normal course of business.

(Id. ¶¶ 16, 17).

Based on this information, Yde sought permission for a no knock warrant for 1017 Pearl Street in order to search for controlled substances, paraphernalia, firearms, gang-related materials, and documents or other items establishing control over the premises. A Racine County Circuit Court Judge issued the warrant, pursuant to which officers seized crack cocaine, a firearm, currency, a scale, documents and a cell phone.

## II. DISCUSSION

### A. Applicable Legal Standard

In ruling on a motion to suppress evidence recovered pursuant to a search warrant, the court first determines whether there is substantial evidence in the record supporting the finding of probable cause to issue the warrant. United States v. Reddrick, 90 F.3d 1276, 1280 (7th Cir. 1996). "Probable cause for a search warrant exists where the known facts and circumstances are sufficient for a reasonably prudent person to form the belief that contraband or evidence of a crime will be found." United States v. Lake, 500 F.3d 629, 632 (7th Cir. 2007).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Illinois v. Gates, 462 U.S. 213, 238 (1983).

3

The reviewing court considers the warrant application in a realistic and common sense manner in order to determine whether it alleges specific facts and circumstances that would permit the issuing magistrate to reasonably conclude that the evidence sought to be seized was associated with the crime alleged and located in the place indicated. United States v. Koerth, 312 F.3d 862, 866-67 (7th Cir. 2002). Where the warrant application is supported by an informant's tip, the reviewing court considers:

> (1) the degree to which police corroborated the informant's statements; (2) the degree to which the informant's knowledge of the events was acquired through firsthand observation; (3) the amount of detail included in the informant's statement; (4) the amount of time between the date of the events and the police officer's application for the search warrant; and (5) whether the informant appeared before the magistrate who issued the warrant.

United States v. Hollingsworth, 495 F.3d 795, 804 (7th Cir. 2007), cert. denied, 76 U.S.L.W. 3347 (2008). "None of these factors is determinative [and] 'a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability.'" United States v. Peck, 317 F.3d 754, 756 (7th Cir. 2003) (quoting United States v. Brack, 188 F.3d 748, 756 (7th Cir. 1999)). Ultimately, the reviewing court must give the magistrate's determination of probable cause considerable weight and resolve doubtful cases in favor of upholding the warrant. United States v. Quintanilla, 218 F.3d 674, 677 (7th Cir. 2000).

If the reviewing court finds the warrant deficient, it must then determine whether the executing police officer could have relied in "good faith" on the magistrate's decision to issue the warrant. See United States v. Leon, 468 U.S. 897, 920-24 (1984). An officer's decision to seek a warrant is prima facie evidence that he acted in good faith. Koerth, 312 F.3d at 868. "A defendant can rebut the presumption of good faith only by showing that the judge issuing the warrant abandoned his/her detached and neutral role, the officers were dishonest or

4

reckless in preparing the affidavit, or the warrant was so lacking in probable cause as to render the officer's belief in its existence entirely unreasonable." United States v. Otero, 495 F.3d 393, 398 (7th Cir.), cert. denied, 128 S. Ct. 425 (2007); see also Koerth, 312 F.3d at 869 (holding that Leon applies unless (1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause or (2) the affidavit is so plainly deficient that any reasonably well-trained officer would have known that it failed to establish probable cause).

**B.     Analysis**

Read in a realistic and common sense manner, Yde's affidavit demonstrates that within the past seventy-two hours the CI personally observed cocaine and marijuana inside 1017 Pearl Street. The CI further identified the person who possessed the drugs as a black male named Quinton Smith and stated that s/he also observed Smith in possession of a semi-automatic handgun inside the residence within the last two weeks. See, e.g., United States v. Taylor, 471 F.3d 832, 839 (7th Cir. 2006) (finding that a CI's first-hand observation of marijuana plants at the defendant's home, which occurred shortly before the execution of the warrant, and the CI's provision of the defendant's full name, supported probable cause finding); United States v. Johnson, 289 F.3d 1034, 1039 (7th Cir. 2002) (finding that although the CI did not provide detail or specificity, his first-hand observations of criminal activity inside the defendant's house supported a finding of probable cause), abrogated on other grounds as recognized by United States v. Vaughn, 433 F.3d 917 (7th Cir. 2006).

Yde investigated further, personally visiting 1017 Pearl Street, running a record check on Smith (learning that Smith was a convicted felon and had recently been released from a drug sentence), and checking police department records on the occupants of 1017 Pearl Street. Yde also provided specific information on the CI's past usefulness to law enforcement

5

in numerous investigations. See, e.g., United States v. Gilbert, 45 F.3d 1163, 1166 (7th Cir.1995) (stating that reliability may be shown by the informant's past record of reliability, and/or through independent confirmation or personal observation by the police). Therefore, although the application certainly could have been stronger, I agree with the magistrate judge that the warrant was supported by probable cause. See, e.g., United States v. Olson, 408 F.3d 366, 372 (7th Cir. 2005) (holding that "while the weight of each item when assessed separately may be slight, . . . when viewed under the totality-of-the-circumstances standard, altogether provide enough to establish probable cause") (internal quote marks and citations omitted); United States v. Pless, 982 F.2d 1118, 1124 (7th Cir. 1992) (stating that "even doubtful cases are to be resolved in favor of upholding the warrant").

Defendant compares the information in the instant warrant application to that in United States v. Williams, No. 04-CR-273 (E.D. Wis. Mar. 18, 2005) (Ordering denying motion to suppress), which I found deficient.[3] While there are some similarities between the two cases, the instant application is stronger. It is true that, like Williams, the CI in the present case provided little detail about the drugs s/he saw, and the affidavit did not explain how the CI knew what s/he saw were controlled substances aside from a vague reference to "personal experiences." See Peck, 317 F.3d at 756 (finding warrant unsupported by probable cause where the CI provided minimal detail and stated that she knew the substances were drugs based on "personal experiences"). However, the CI in the present case indicated that s/he observed the drugs within the past seventy-two hours, whereas in Williams the CI contacted the officer-affiant within seventy-two hours of the warrant application and the timing of the CI's

---

[3] I nevertheless denied the motion to suppress in Williams under Leon.

6

observations of contraband was left unclear. Further, the CI in the present case also observed a firearm at 1017 Pearl Street, an item, unlike narcotics, which is not fungible or likely to be sold in a short period of time. United States v. Harju, 466 F.3d 602, 608 (7th Cir. 2006). Finally, it is clear from the instant affidavit that the CI was inside the residence on Pearl Street and personally observed the contraband inside the house, unlike in Williams, where the CI observed the sale of crack out of the front door of the target residence.

Defendant also argues that the instant application suffers a similar corroboration deficit as the application in Williams. It is true that, as in Williams, Yde did little more than personally visit the house at 1017 Pearl Street (without the CI) and run a record check on Quinton Smith.[4] See, e.g., Peck, 317 F.3d at 757 (stating that a record check alone does not corroborate a CI's statements alleging that a search will uncover evidence of a crime). However, an officer may establish an informant's reliability either by independent confirmation or by the informant's past record of reliability. Gilbert, 45 F.3d at 1166. In the present case, Yde stated that the CI had:

> supplied information about on-going criminal activity to the Racine Police Department, Special Investigations Unit that has resulted in at least 5 felony and 2 misdemeanor arrests in the past six months, further that these arrests were made as a direct result of a search warrant execution based on this information or as an immediate police response to specific current criminal activity. The CI has also provided information in regards to this drug investigation and on at least 10 other drug dealers in the City of Racine that has been able to verify [sic] through further investigations and other sources.

(Yde Aff. ¶ 5.) This language bears some resemblance to that used in the application in Williams:

> Your affiant believes the information supplied by the CI, as the CI has supplied information about on-going criminal activity to the Racine Police Department that

---

[4] As defendant suggests, it is unclear how Yde's discovery that Carolyn Peet held the lease to the residence on Pearl Street bolstered the warrant application.

7

> has resulted in at least 10 felony and 12 misdemeanor arrests in the past year, further that these arrests were made as a direct result of a search warrant execution based on this information or as an immediate police response to specific current criminal activity, and that information has been personally verified by your affiant and other members of the Racine Police Department Special Investigations Unit.

Williams, No. 04-CR-273, slip op. at 2, quoting Derks Aff. ¶ 5. Although I am not untroubled by the apparent use of boilerplate language in affidavits from the Racine Police Department, there is no indication that Yde's assertions are untrue. Further, Yde did provide additional information in the present case, specifically that the CI had cooperated in numerous drug investigations. In Williams, by contrast, the officer provided no detail about the nature of the cases the CI had previously worked on, leaving me with doubts about the CI's reliability in drug investigations.

Therefore, for all of these reasons and those stated by the magistrate judge, I find the instant warrant application sufficient. In the alternative, I deny the motion under Leon. For the reasons already discussed, the instant application is not materially similar to that in Williams. See Koerth, 312 F.3d at 869. Nor is it materially similar to those submitted in the other three cases defendant cites: Peck, Koerth and Reddrick. In Peck, the CI had never worked with the police before, unlike the present case, where the CI had helped the police many times. Similarly, the informant in Koerth was previously unknown to police, unlike in this case. And, unlike in Reddrick, in which the officer stated that he had used the CI just three times previously and provided no details as to the results, the CI in the present case provided information that resulted in at least 5 felony and 2 misdemeanor arrests in the six months preceding the application, as well as "information in regards to this drug investigation and on at least 10 other drug dealers in the City of Racine." (Yde Aff. ¶ 5.) Thus, none of the cases

8

defendant cites are materially similar. Finally, for the reasons set forth above and those stated by the magistrate judge, the instant warrant application was not so deficient that no reasonably well-trained officer would have relied upon it.

### III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 11) is **ADOPTED**, and defendant's motion to suppress (R. 8) is **DENIED**.

**IT IS FURTHER ORDERED** that the government's unopposed motion to adjourn the trial (R. 16) is **GRANTED**.  The court finds that the ends of justice served by granting the continuance outweigh the best interests of the defendant and the public in a speedy trial.  18 U.S.C. § 3161(h)(8)(A).  Specifically, the court finds that failure to grant the continuance would deny counsel for the government the reasonable time necessary for effective preparation.  18 U.S.C. § 3161(h)(8)(B)(iv). Therefore, the **FINAL PRE-TRIAL** scheduled for January 25, 2008, is **ADJOURNED** to **Friday, March 21, 2008, at 11:30 a.m.**, and the **TRIAL** scheduled for February 4, 2008, is **ADJOURNED** to **Monday, March 31, 2008, at 10:00 a.m.**

Dated at Milwaukee, Wisconsin, this 23rd day of January, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge