**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   v.                                         **Case No. 07-CR-285**

**JOHARI WALKER**
        **Defendant.**

---

### SENTENCING MEMORANDUM

Defendant Johari Walker lived part-time with her boyfriend, a drug dealer named Quinton Smith. Police obtained information about Smith's activities from an informant, secured a warrant to search the couple's residence, and recovered crack cocaine, marijuana and a firearm. The government charged defendant with keeping a drug house, 21 U.S.C. § 856(a)(2), and she pleaded guilty to the charge. In imposing sentence on defendant, I first calculated her advisory guideline range, then determined the actual sentence under all of the factors set forth in 18 U.S.C. § 3553(a). See, e.g., United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008); United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007).

### I. GUIDELINES

The pre-sentence report ("PSR") recommended that I calculate defendant's base offense level under U.S.S.G. § 2D1.8(a)(2), which applies if "the defendant had no participation in the underlying controlled substance offense other than allowing use of the premises." Under this guideline, "the offense level shall be 4 levels less than the offense level from § 2D1.1 applicable to the underlying controlled substance offense, but not greater than level 26." In the present case, the "underlying offense" involved Smith's possession of 90 grams of crack and

18 grams of marijuana,[1] which produced a base offense level of 30 under U.S.S.G. § 2D1.1(c). Subtracting 4 levels under § 2D1.8(a)(2) and 3 levels for acceptance of responsibility under § 3E1.1, for a final level of 23, and coupled with defendant's criminal history category of III, the PSR recommended a guideline range of 57-71 months in prison. Without objection, I adopted the PSR's calculations.

## II.  SENTENCE

A.  **Section 3553(a) Factors**

In imposing sentence, I must consider all of the factors set forth in § 3553(a). United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007), cert. denied, 128 S. Ct. 963 (2008). Those factors include:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the advisory guideline range;

(5)  any pertinent policy statements issued by the Sentencing Commission;

(6)  the need to avoid unwarranted sentence disparities; and

---

[1]The parties agreed that Smith's handgun should not be attributed to defendant.

2

(7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The statute requires the court, after considering these factors, to impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public and rehabilitation of the defendant. Id. While the district court must "give respectful consideration to the Guidelines" in determining a sufficient sentence, Kimbrough v. United States, 128 S. Ct. 558, 570 (2007), the court may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007). Nor is the court necessarily bound by the "policy" determinations embedded in the guidelines, including the guidelines' disparate treatment of crack versus powder cocaine. See Kimbrough, 128 S. Ct. at 575. Rather, after accurately calculating the advisory range so that it "can derive whatever insight the guidelines have to offer," the district court "must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007).

**B.   Analysis**

    **1.   The Offense**

In January and February 2007, while living with her drug-dealer boyfriend, Quinton Smith, defendant managed and controlled a place used to store and distribute crack cocaine. The offense came to light when police executed a warrant at their apartment on February 13, 2007, based on information that Smith possessed drugs and a handgun there. Defendant and Smith were both present when officers executed the warrant, pursuant to which officers seized a loaded handgun, a total of 90 grams of crack cocaine, 19 grams of marijuana, and drug

3

paraphernalia suggestive of dealing, in a lock-box in the couple's bedroom. The record contained no indication that defendant engaged in dealing herself; rather, she allowed Smith to use the bedroom to store his drugs and may have assisted him in other minimal ways.[2] The PSR and the parties agreed that U.S.S.G. § 2D1.1(a)(2) applied, as defendant had no participation in the underlying controlled substance offense other than allowing use of the premises.

### 2. The Defendant

Defendant was twenty-three years old and had a modest prior record, with juvenile adjudications for disorderly conduct, operating a motor vehicle without owner's consent and theft, and an adult felony theft conviction. The adult case arose out of her misappropriation of a credit card number. She did poorly on probation in that case, being revoked twice, the second time for the conduct at issue in the present case. The record revealed some anger issues, particularly as evidenced by the juvenile DC and first revocation, both of which involved altercations with others. Defendant's aunt confirmed those anger issues in a statement to the PSR writer. The PSR also related some mental health issues in ¶¶ 50-53, and some past substance abuse in ¶¶ 54-55.

Defendant's childhood was not the best: her father was absent, and her mother abused drugs, leaving defendant to be raised by her grandmother and aunt. She was expelled from school based on bad conduct and compiled a limited employment record as set forth in ¶¶ 58-59 of the PSR. She had never been married and had no children, but had been in an off-and-

---

[2]The government noted that defendant admitted in a proffer statement that she purchased cocaine on Smith's behalf. Pursuant to the terms of the parties' proffer agreement, these statements were not to be used against her. See U.S.S.G. § 1B1.8.

4

on relationship with Smith for years, which relationship led to her indictment in this case. Defendant and Smith had no contact since their arrest in this case, and defendant's aunt stated that she would take defendant in after she finished her sentence, which provided cause to believe that this harmful relationship had ended. Nevertheless, defendant had correctional treatment needs, which I attempted to address initially via recommendations to the Bureau of Prisons ("BOP") and then as conditions of supervised release.

### 3. Guidelines and Purposes of Sentencing

The guidelines called for a term of 57-71 months, but I found that range greater than necessary to satisfy the purposes of sentencing in this case. First, the range was based largely on the fact that Smith dealt crack cocaine. The guidelines, even after the Commission's recent 2 level reduction, continue to treat crack offenses much more severely than powder cocaine offenses. In this case, for example, had the substance been powder cocaine, defendant's base offense level under U.S.S.G. § 2D1.1(c) would have been 16 rather than 30. With further reductions of 4 levels under § 2D1.8(a)(2) and 2 levels under 3E1.1(a), the guidelines would have recommended a sentence of 10-16 months, rather than 57-71 months. In Kimbrough, the Supreme Court held that the district court may conclude when sentencing a particular defendant that the crack/powder ratio "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." 128 S. Ct. at 575. I found the guideline sentence greater than necessary in this case.

In making this determination, I further noted the lack of evidence that defendant participated in the choice to deal crack rather than powder cocaine (or some other drug entirely). It seemed all the more appropriate to ameliorate the crack/powder disparity under these circumstances. The record also contained no evidence that defendant personally

5

engaged in dealing, and the search warrant was based solely on Smith's activities. Defendant was not mentioned in the warrant application. Nor was there evidence that Smith's crack dealing in the shared home created any of the harmful effects that originally motivated the disparate treatment of crack and powder cocaine. Smith had a gun, but the parties agreed that such possession should not be attributed to defendant. In any event, there was no indication that the gun was ever used for any reason, and officers found it in the lock-box. No violence or threats accompanied this offense.

Second, and relatedly, I noted that defendant's participation in this offense resulted solely from her relationship with Smith. She was not a dealer herself, either in this instance or in any of her past cases; she simply allowed Smith to use their bedroom to store his drugs. Further, she only stayed with Smith part-time; she otherwise lived with her aunt, as Smith was not welcome in her aunt's home. I have written in other cases about the so-called "girlfriend problem," and this case appeared to be another example of that phenomena, in which a woman faced a lengthy prison sentence based on the amount and type of drugs possessed by a boyfriend, whom she assisted in drug trafficking in limited ways. See United States v. Greer, 375 F. Supp. 2d 790, 794-95 (E.D. Wis. 2005). The problem is especially profound where, as here, the boyfriend decided to deal crack. See United States v. Willis, 479 F. Supp. 2d 927, 931-32 (E.D. Wis. 2007).

Third, I noted that defendant's state extended supervision was revoked (the second time) based solely on the conduct at issue in this case, resulting in a 9 month prison sentence. Because the state sentence was discharged, I could not run the instant sentence concurrently, as I otherwise might have under United States v. Huusko, 275 F.3d 600, 603 (7th Cir. 2001). I instead considered the fact that defendant served this time in determining a sufficient

6

sentence under § 3553(a), along with the fact that defendant served those 9 months, as well as her time in federal custody since November 2007, in county jails, which is harder time than that spent in a federal prison, which offers more in the way of programming and recreation.[3]

Defendant requested a sentence of 8 months, basically time-served. I found that somewhat more was required to satisfy the purposes of sentencing. Under all of the circumstances, I found a sentence of 12 months and 1 day sufficient but not greater than necessary. This resulted in defendant serving a total of 21 months based on the conduct at issue, which I found sufficient to provide just punishment given her minimal participation in the offense of conviction, while still providing a sufficient incremental punishment that acknowledged the fact that she was on supervision. As this total term was longer than any she had previously served, it was also sufficient to deter her from re-offending. Finally, given her relatively limited record and the mitigated nature of her offense conduct, I found this term sufficient to protect the public.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 12 months and 1 day. I recommended that she participate in any substance abuse treatment and vocational training available and be placed at a facility as close to southeast Wisconsin as possible. Upon release, I ordered that she serve a three year term of supervision, with conditions including drug testing and treatment, and mental health treatment including an anger

---

[3] I also considered the fact that all 6 of defendant's criminal history points stemmed from a single case – 3 points for the sentence itself and 3 more points under U.S.S.G. §§ 4A1.1(d) & (e) because she committed the instant offense while on supervision and shortly after her release from the 9 month revocation sentence. This prior conviction involved theft of a credit card for a $623 charge, a relatively minor offense that likely did not warrant placing defendant in category III with other, more serious felons.

7

management program.

Dated at Milwaukee, Wisconsin, this 10th day of July, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge